**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MINNEBO, *et al.* | HONORABLE KAREN M. WILLIAMS |
| Plaintiffs, | |
| v. | Civil Action<br>No. 22-05999 KMW-AMD |
| METAL SUPERMARKETS FRANCHISING<br>AMERICA INC, *et al.*, | **OPINION** |
| Defendants. | |

APPEARANCES:

EVAN MATTHEW GOLDMAN
THE FRANCHISE FIRM LLP
225 WILMINGTON WESTCHESTER PIKE
SUITE 200
CHADDS FORD, PA 19317

    *Counsel for Plaintiffs William Minnebo and Philly Metal Supply LLC*

CHRISTINE MARIE PICEKL, ESQ.
MICHAEL J. CONLAN, ESQ.
BACKES & HILL LLP
3131 PRINCETON PIKE, BUILDING 5, SUITE 114
LAWRENCEVILLE, NJ 08648

SCOTT L. PURO, ESQ.
WEIR ATTORNEYS
2109 PENNINGTON ROAD
EWING, NJ 08638

    *Counsel for Defendants Metal Supermarkets Franchising America Inc., Stephen Schober, and Andrew Arminen*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Plaintiffs William Minnebo and Philly Metal Supply LLC (collectively, "Plaintiffs"), bring this action against Defendants Metal Supermarkets Franchising America Inc., Stephen Schober, and Andrew Arminen, (collectively, "Defendants"), alleging that Defendants fraudulently induced Plaintiffs into a franchisee agreement that was designed to fail, and impermissibly terminated the franchise agreement without cause, violating the New Jersey Franchise Practices Act, N.J.S.A. § 56:10-1 *et seq.* ("NJFPA"), among other New York and common law claims.

This matter comes before the Court on Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion for Leave to File an Interlocutory Appeal, (ECF No. 31). Plaintiffs oppose the motion, (ECF No. 36), and Defendants replied, (ECF No. 37). For the reasons that follow, the Court will deny Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion for Leave to File an Interlocutory Appeal, (ECF No. 31).[1]

## II. BACKGROUND

In March of 2021, Plaintiffs contacted Defendant Metal Supermarkets Franchising America, Inc ("MSFA") about purchasing a franchise, which was ultimately consummated on May 1, 2021. Amend. Compl. ¶¶ 15-17. Plaintiffs allege that Defendants mislead them by not providing up to date information regarding market conditions and the predictions related to initial investment and competition in the local marketplace. *Id.* ¶¶ 30-40. Plaintiffs further allege that the Defendants failed to help them during their course of operations and imposed unreasonable standards, resulting in Plaintiffs closing the business on June 2, 2022. *Id.* ¶ 41. Defendants

---

[1] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

terminated the franchise agreement on June 4, 2022. *Id.* ¶ 42. Plaintiffs argue that the termination of the franchise agreement was without good cause. *Id.* ¶ 43.

Defendants removed this case to federal court and submitted a motion to transfer the matter to the District Court for the Western District of New York pursuant to the franchise agreement's forum selection clause. *See* Motion to Transfer. Plaintiffs then amended their Complaint to demonstrate that the NJFPA precluded transfer. *See* Amend. Compl. On September 6, 2023, the Court held a hearing on the Amended Motion to Transfer (ECF No. 13), where Plaintiffs brought to the Court's attention the case *Tynan v. General Motors Corp.*, 127 N.J. 269 (N.J. 1992) *adopting* 248 N.J. Super. 654 (N.J. Super. Ct. App. Div. 1991) (Cohen, J., dissenting in part). Sept. 6, 2023, Hearing Transcript ("Transcript") (ECF No. 30) 10:11-24. At the hearing, the Court reviewed the case and found the facts to be dissimilar to the instant matter, noted the case was not binding, and granted the motion to transfer. *See* Order (ECF No. 29); Transcript 11:20-14:6; 15:7-16:6; 17:11-18:16; 23:8-26:11. However, because this case was not cited to or expounded upon in the briefings and was only addressed at the hearing, the Court permitted Plaintiffs to file either a motion for reconsideration or to further amend the Complaint. *See* Transcript 34:3-10. Plaintiffs chose to submit a motion for reconsideration, which is the instant motion before the Court.

### III. LEGAL STANDARD

#### A. Motion for Reconsideration

Motions for reconsideration, though not expressly recognized under the Federal Rules of Civil Procedure, are generally treated as either (1) motions to alter or amend judgment under Rule 59(e), or (2) motions for relief from judgment under Rule 60(b). *See Rich v. State*, 294 F. Supp. 3d 266, 277 (D.N.J. 2018). Pursuant to Local Civil Rule 7.1(i) the Court also has discretion to grant reconsideration where "the record was inadequately developed on a particular issue." *Baker*

3

*v. Allen*, No. 03-2600, 2006 WL 2226351 at *4 (D.N.J. Jul. 28, 2006) (quoting *Hatco Corp. v. W.R. Grace & Co. Conn.*, 849 F. Supp. 987, 990 (D.N.J. 1994)).

Regardless of which rule is utilized to bring the motion, reconsideration by the Court is an extremely limited remedy. "[T]he scope of a motion for reconsideration [under Rule 59(e)] . . . is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). Similarly, Rule 60(b) motions are not the appropriate vehicle to reargue issues "that the court has already considered and decided." *Jones v. Lagana*, No. 12-5823, 2016 WL 4154677, at *1 (D.N.J. Aug. 3, 2016) (internal quotation marks omitted)). Similarly, reconsideration pursuant to Local Rule 7.1(i) is to be granted very sparingly. *Baker*, 2006 WL 2226351 at *4 (internal citations and quotations omitted).

To prevail on a Motion for Reconsideration, a party must demonstrate either "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also Baker*, 2006 WL 2226351 at *4 (utilizing the same standard under Local Civil Rule 7.1(i)).

However, a motion for reconsideration cannot be used to revisit issues "with the benefit of the hindsight provided by the court's analysis," (*VisionSoft Consulting, Inc. v. Cognitus Consulting LLC*, 19-11526, 2020 WL 5542790 at *5 (D.N.J. Sept. 16, 2020) (internal citations and quotations omitted)), nor may such a motion "be used to expand the record before the court" because "there is a strong policy against entertaining motions for reconsideration based on evidence that was readily available at the time the original motion was heard." *S.C. Deptford Twp. Bd. of Educ.*, 248

F. Supp. 2d 368, 381 (D.N.J. 2003) (internal citations omitted); *see also DeLong Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135, 1140 & n.5 (3d Cir. 1980) (holding District Court did not abuse its discretion in refusing to consider, in the context of a reconsideration motion, evidence that was readily available but not submitted in the underlying motion). In other words, a "motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before." *Bermingham v. Sony Corp. of America, Inc.*, 820 F. Supp. 834, 856-57 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994). The Third Circuit defines "new evidence" for the purposes of a motion for reconsideration as "not . . . evidence that a party submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration." *Blystone*, 664 F.3d at 415-16. The Court is "in fact bound not to consider such new materials, lest the strictures of our reconsideration rule erode entirely." *Scott v. IBM Corp.*, No. 98-4092, 2000 U.S. Dist. LEXIS 17979 at *4 (D.N.J. Nov. 29, 2000) (quoting *Resorts International v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 n.3 (D.N.J. 1992)) (emphasis in original).

### B. Motion for Interlocutory Appeal

Where a district judge enters an order that is otherwise not appealable, federal law permits the judge the option of stating in writing that the issue at hand is worthy of an interlocutory appeal. An order granting a motion to transfer venue is a type of order that is not a final decision of the court and is considered interlocutory. "'It is entirely settled . . . that an order granting . . . a motion to transfer venue under [28 U.S.C. § 1404(a)] . . . is interlocutory in character and not immediately appealable under Section 1291.' 15 Charles Alan Wright, Arthur R. Miller 8B Edward H. Cooper,

5

Federal Practice and Procedure § 3855, at 319 (3d ed. 2007)." *Soorka v. Kean Univ.*, No. 14-4561, 2015 WL 3561610 at *1 (D.N.J. Jun. 5, 2015) (quoting *Liberi v. Taitz*, 425 F. App'x 132, 133 (3d Cir. Mar. 28, 2011)). The grounds for transfer are not "critical" to the appealability of the order. *Id.* (quoting *Single Employer Welfare Ben. Plan Trust v. Datalink Electronics, Inc.*, 372 Fed. App'x 294, 296 (3d Cir. Mar. 24, 2010)) ("It is irrelevant for these purposes whether the motion to transfer is based on a forum selection clause, the convenience of witnesses, or other factors."). Motions for interlocutory appeals are governed by 28 U.S.C. § 1292(b), which states in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Interlocutory appeal is a device to be used only sparingly and in exceptional cases where "the interest cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *DeLalla v. Hanover Ins.*, No. 9-2340, 2010 WL 3908597 at *3 (D.N.J. Sept. 30, 2010). Permission to appeal is "wholly within the discretion of the [district] courts" and is not mandatory even if the criteria to appeal have been met. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)).

## IV. DISCUSSION

### A. Motion for Reconsideration

The instant motion revolves around the meaning of the second prong of the NJFPA, because Plaintiffs met the first and third prong of the analysis.[2] As noted above, motions for

---

[2] All three prongs to be met in order to assert a claim under the NJFPA: "(1) the performance of [the agreement] contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey, (2) where gross sales of products or services between the franchisor and franchisee covered by such franchise shall have

6

reconsideration are limited to specific situations. It is clear from the previous hearing for this matter and from the recent briefings before this Court that this motion does not come before it today based on an intervening change in the controlling law, nor does the motion present new evidence that was not previously available, as the controlling law Plaintiffs point to is a case from over thirty years ago. *See Tynan v. General Motors Corp.*, 127 N.J. 269 (N.J. 1992) *adopting* 248 N.J. Super. 654 (N.J. Super. Ct. App. Div. 1991) (Cohen, J., dissenting in part); *see also* Transcript 11:20-14:6; 15:7-16:6; 17:11-18:16; 23:8-26:11. The Court permitted Plaintiffs to provide additional briefing on this matter if they so choose, despite the Court noting when it was first addressed in the hearing that *Tynan* was not binding precedent on this Court. *See* Transcript 13:18-14:6; 25:23-26:11.

Plaintiffs argue that the Court must consider *Tynan* and the handful of cases that address *Tynan*'s interpretation of the NJFPA's second prong in order to "correct a clear error of law or fact or to prevent manifest injustice." Motion for Reconsideration at 10. The Court has reviewed *Tynan* and its limited progeny related to the NJFPA's second' prong and remains unpersuaded.

As the Court noted in its September 6, 2023 hearing, *Tynan* was decided in 1992—over thirty years ago—and the New Jersey Supreme Court's reversal does not specify exactly what parts of Judge Cohen's dissent it agreed with. *Tynan*, 127 N.J. 269 ("So much of the judgment of the

---

exceeded $35,000.00 for the 12 months next preceding the institution of suit pursuant to this act, and (3) where more than 20% of the franchisee's gross sales are intended to be or are derived from such franchise[.]" N.J.S.A. § 56:10-4. *See APFA, Inc. v. UATP Mgmt., LLC,* No. 20-5007, 2021 WL 323474 at *3(D.N.J. Jan. 31, 2021). Defendants assert that Plaintiffs are not citizens of New Jersey and therefore should not be beneficiaries of the NJFPA's protection. Def.'s Reply Br. at 13-14. However, the NJFPA states that a plaintiff must "establish or maintain a place of business within the State of New Jersey," and the NJFPA defines "place of business" as a "fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services," which does not include an office, warehouse, or place of storage." *Crest Furniture, Inc. v. Ashley Homestores, Ltd.,* No. 20-01383, 2020 WL 6375808 at *5 (D.N.J. Oct. 30, 2020); *see also* N.J.S.A. 56:10-4(a) and -3(f). Neither party contests that the physical location of the store of the franchise in question was in New Jersey, and thus, based on the language of the statute, the geographic prong is satisfied. Next, Plaintiffs asserted that "100% of Philly Metal Supply LLC's gross sales were intended to be or are derived from the franchise relationship" which satisfies the third prong. Amend. Compl. ¶81.

7

Appellate Division as affirmed that judgment of dismissal of that claim is reversed, substantially for the reasons expressed in Judge Cohen's partial dissent[.]"). The New Jersey Legislature has not taken Judge Cohen's recommendations and the law has remained unchanged. *See* N.J.S.A. § 56:10-1 *et seq*. Even so, there are a limited number of cases that discuss *Tynan* as it applies to the second prong of the NJFPA, and only two that emerge from the Third Circuit: *Liberty Lincoln-Mercury v. Ford Motor Co.* (reported) and *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.* (unreported).[3]

In *Liberty*, the Third Circuit began its analysis by noting that "[c]onstruing the statutory terms according to their plain and ordinary meaning . . . is required under New Jersey Law." *Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 566 (3d Cir. 1998). The Third Circuit cited to *Tynan's* dissent when discussing the legislative purpose behind the NJFPA, in pertinent part:

> The New Jersey Courts have held that the NJFPA is a remedial statute intended to equalize the disparity of bargaining power in franchisor-franchisee relations. *See Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 680 A.2d 618, 626 (N.J. 1996) (recognizing NJFPA's "basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors"); *Tynan v. General Motors Corp.*, 127 N.J. 269, 604 A.2d 99, 100 (N.J. 1992) (adopting reasoning of dissent below stating that "the Franchise Practices Act is remedial in purpose [and]

---

[3] There are two unreported cases in this district that assert *Tynan's* dissent represents the temporal limitation of the second prong is not intended to be a statute of limitations. *See Bella and Rosie Rock LLC v. We Rock the Spectrum, LLC*, No. 17- 3628, 2018 WL 844398 (D.N.J. Feb. 13, 2018); *Am. Estates, Inc. v. Marietta Cellars, Inc.*, No. 10-6763, 2011 Dist. LEXIS 44278 (D.N.J. Apr. 25, 2011). The Court finds these cases unpersuasive. First, *Bella and Rosie Rock* does not provide any discussion or analysis of *Tynan* and simply cites to the premise in a footnote rejecting Plaintiff's argument to extend *Tynan* to include projected gross sales. *Bella and Rosie Rock*, 2018 WL 844398 at * x n.2). In *Am. Estates*, the court importantly notes that Judge Cohen's dissent "speaks to two scenarios: (1) where the termination of the franchise pushes the franchisee out of business; and (2) where there is a violation of the NJFPA but the franchise continues," and found that Judge Cohen's interpretation should apply in its case where the franchise was terminated but the franchisee's business survived. In the instant case, none of the aforementioned scenarios are present: the franchisee here *ended the franchise relationship itself* and closed on June 2, and the franchisor terminated the agreement *due to the closure of the business* on June 4. *See* Amend. Compl. ¶¶ 41-42. The Court noted this particular set of facts in its hearing on September 6, 2023, and believes that the particular set of facts here do not invoke the balance of equities that Judge Cohen's dissent sought to address, which relates to arbitrary termination of a franchise agreement. *See* Transcript 23:8-22.

> focuses on the need to protect franchisees from inequitable treatment by economically more powerful franchisors") (citing *Tynan v. General Motors Corp.*, 248 N.J. Super. 654, 591 A.2d 1024, 1035 (N.J. Super. Ct. App. Div. 1991) (Cohen, J., dissenting in part)); *Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co.*, 86 N.J. 453, 432 A.2d 48, 52-54 (N.J. 1981) (discussing "disparity in . . . bargaining power" addressed in NJFPA).

*Id.* In *Liberty*, the Third Circuit did not alter the statute's terms, rather, it cites to *Tynan* in reference to the main concern of the statute: to protect franchisees with less bargaining power from more powerful franchisors.

Next, the Third Circuit discusses *Tynan* again in *Golden Fortune*, where it specifically determined whether the temporal limitation in the second prong applied to the third prong, despite no temporal limitation in the statute itself. *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, Nos. 22-1710 & 22-1885, 2022 WL 3536494 at *4 (3d Cir. Aug. 5, 2022). The Third Circuit directs that the 12-month limitation should apply to the 20% of the gross sales requirement to protect the type of franchisees who are in need of the NJFPA's security. *Id.* at 5.[4] The Third

---

[4] The District Court had decided that because there was no temporal limitation in the statute for the third prong, none would apply in determining whether a given franchise qualified under the NJFPA, but the Third Circuit believed "the canon of consistent usage indicates that we should also apply the 12-month limit to subsection (a)(3)" and that "the better reading is that '20% of a franchisee's gross sales *over a 12-month period* are intended to be or are derived from the franchise'" because "[h]ere, the Distribution Agreement is for a term of 12 months. It follows that we should consider 'gross sales' over that period for the purposes of the 20% requirement." *Id.* at *5. While the Third Circuit stated the better reading is a "12 month period" the Court notes that the Third Circuit does *not* modify the clause of subsection (a)(2) and determined that the 12 month period applicable to (a)(3) was pertinent here because Section 56:10-3(a) defines a "franchise" as "a written arrangement for a definite or indefinite period" and the facts of this case noted that the agreement was for a term of 12 months. Notably, this reading denied Golden Fortune the protection of the NJFPA because it did not satisfy the 20% gross sales requirement:

> Applying the 12-month limitation, Golden Fortune has not satisfied the 20% gross sales requirement. Between September 1, 2018 and August 31, 2019, Golden Fortune derived $3,959,887—or 8.6%—of its $45,720,201 in gross sales from Mei-Xin. Golden Fortune urges us to focus only on the "peak sales season for MX Mooncakes"—namely, the three-month period surrounding the Mid-Autumn Festival during which 24% of Golden Fortune's gross sales were derived from Mei-Xin. J.A. 192 ¶ 91. We decline to do so. That approach poses an inconsistent usage problem. It disregards that the Distribution Agreement covers a 12-month period and contemplates distribution of a myriad of non-seasonal Mei-Xin products apart from the mooncake. Lastly, it does not further the protective

9

Circuit found the temporal limitation important to protect the type of franchise that the New Jersey Legislature intended to protect, those with diminished bargaining power and high reliance on its franchisor.

Similarly, the Court construes the three prongs of N.J.S.A. § 56:10-4 as further qualifiers for a court to assess the eligibility of a given franchisee. This is consistent with the structure, language, and purpose of the statute. N.J.S.A. § 56:10-3(a) provides the distinction between franchises and non-franchises, and N.J.S.A. § 56:10-4 provides for further distinction between those companies already determined to be franchisees under the act, to "single[] out for protection those franchises that are especially vulnerable to the disproportionate power of franchisors." *Boyle v. Vanguard Car Rental USA, Inc.*, No. 8-6276, 2009 WL 3208310 at *5 (D.N.J. Sept. 30, 2009). However, this Court is not in a position to excise a statutory requirement that has remained in force over the course of thirty years and is mindful of its obligation to construe the statute's terms according to their plain and ordinary meaning as required by New Jersey Law. *Liberty*, 134 F.3d at 566. Thus, the Court finds that Plaintiffs' broad reading of *Tynan* is inapplicable, and that Plaintiffs failed to meet the second prong of N.J.S.A. § 56:10-4, which requires all three factors to be present to assert that a given franchisee qualifies for the NJFPA's protections.

While the Court notes that having the New Jersey Supreme Court explicate on its position regarding Judge Cohen's dissent in *Tynan* as it applies in cases involving the NJFPA's second prong would be helpful to the development of the limited jurisprudence on the topic, this case cannot be the test case because, ultimately, Plaintiffs fail to state a claim under the NJFPA beyond simply qualifying as a protected franchisee. Here, reconsideration would be unnecessary because

---

purpose of the NJFPA: without the Mei-Xin mooncake, Golden Fortune can still make 91.4% of its gross sales and distribute 1,598 other products.
*Id.*

it would not alter the Court's prior ruling. *See Glielmi v. Raymond Corp.*, No. 09-5734, 2012 U.S. Dist. LEXIS 156548 at *10-11 (D.N.J. Nov. 1, 2012) ("reconsideration of any new evidence is only permissible if the evidence would alter the disposition of the case."). Even if the Court agreed with Plaintiffs' interpretation of the statute, it does not change the fact that Plaintiffs failed to address the other deficiencies that remain in the Amended Complaint specific to their NJFPA claim. In this case, Plaintiffs' only claim under the NJFPA is that they suffered wrongful and actual termination, as well as constructive termination, through the imposition of unreasonable standards of performance. Amend. Compl. ¶¶ 82-87. However, Plaintiffs' Amended Complaint does not provide sufficient facts to support such a claim.

The NJFPA prohibits the "imposition of unreasonable standards of performance" on a franchisee. *Naik v. 7-Eleven, Inc.*, No. 13-4578, 2014 WL 3844792 at *13 (D.N.J. Aug. 5, 2014) (quoting N.J.S.A. 56:10-5, -7(e)). While the statute itself does not define what an "unreasonable standard" is, other courts have found a franchisor to be imposing "unreasonable standards" under the NJFPA where they have "required a franchisee to operate at a substantial financial loss while the franchisor implements a new and unproven market strategy, or set franchisees up for failure so that the franchise agreements could be terminated." *Naik v. 7-Eleven, Inc.*, No. 13-4578, 2014 WL 3844792 at *14 (D.N.J. Aug. 5, 2014) (quoting *King v. GNC Franchising, Inc.*, No. 04–5125, 2006 WL 3019551 at *4 (D.N.J. Oct. 23, 2006)) (discussing cases). The "hallmarks" of an unreasonable standard of performance have been described as "arbitrariness, bad intent or economic ruin." *King*, 2014 WL 3844792 at *5. Further "[i]t is without doubt that if a franchisor manipulates the system causing a franchisee's breach so that a Franchise Agreement is terminated, the termination occurs without good cause in violation of the NJFPA, N.J.S.A. § 56:10–5." *King*, 2006 WL 3019551 at *4 (citing *Dunkin' Donuts Inc. v. Dough Boy Management, Inc.*, No. 02-243, 2006 WL 20521 at

11

* 11 (D.N.J. Jan. 3, 2006)); *see also Gelardi Corp. v. Miller Brewing Co.*, 502 F. Supp. 637, 652–53 (D.N.J.1980) (holding that jury could find franchisor's standards unreasonable where franchisor had "made [franchisee] Gelardi's business life sufficiently miserable that Gelardi was forced to quit its distribution of Miller products in its primary area of responsibility").

Here, Plaintiffs have not improved upon the Amended Complaint's factual allegations relating to the "standards" that created the conditions for Plaintiffs' termination, which remain threadbare. In Plaintiffs' Amended Complaint there is one single paragraph that simply states that "Defendants requirement that Plaintiffs must purchase inventory from a competitor who sells the same inventory to retail customers at the same prices is actionable for being an unreasonable standard of performance." Amend. Compl. ¶44. Plaintiffs point to an unrelated 2019 article written by Stephen Schober about franchising. Otherwise, the Amended Complaint is utterly devoid of any facts related to the contours of the "standard" to which Plaintiffs were allegedly held. Plaintiffs fail to demonstrate how the alleged requirement specifically impacted the performance of the franchise, or how this requirement was manipulative, arbitrary, or imposed with bad intent or with the intent of the franchisee's economic ruin. The sole fact that Plaintiffs asked for help "multiple times" to deal with the competitive market forces, and that such requests "remained essentially without result" or were inadequate is not sufficient to sustain a claim of termination, whether constructive or actual. Plaintiffs' assertion related to the termination of the franchise based on unreasonable standards of performance is an unadorned, the-defendant-unlawfully-harmed-me accusation which, without more, is insufficient to state a claim.[5]

---

[5] Plaintiffs' secondary argument—that the franchisor's alleged inaccurate representations and omissions related to the signing of the franchise agreement are examples of the imposition of unreasonable standards, (*see* Pl.'s Br. ECF No. 18 at 9)—similarly fails in that none of the facts cited to by Plaintiffs in the Amended Complaint describe any downstream purchase requirements, or Plaintiffs' objection to the same, or any other details related to any policies, procedures, or penalties related to the same. The Court will not belabor the point further and notes that the only plausible claim under the NJFPA that Plaintiffs allege is the improper termination by unreasonable standards.

Therefore, even if the Court agreed with Plaintiffs' interpretation of *Tynan*, the Amended Complaint still fails to state a claim pursuant to the NJFPA, and thus the benefits thereof cannot apply here. Without a viable NJFPA claim, the forum selection clause in Plaintiffs' contract is not "presumptively invalid." *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 192-93 (N.J. 1996). Thus, the Court affirms its order to transfer this case.[6]

## B. Motion for Interlocutory Appeal

Plaintiffs request an interlocutory appeal in this matter should the Court disagree with its interpretation of *Tynan*. The Court must consider the standard pursuant to 28 U.S.C. § 1292(b) to determine if certification is appropriate. The movant must show that the matter involves a "controlling question of law," where there is "substantial ground for a difference of opinion" as to

---

[6] The franchise agreement in this case contains a forum-selection clause where the parties agreed to litigate disputes in the Western District of New York. To determine whether it is appropriate to enforce a forum-selection clause, there is a two-step analysis the Court must undertake. First, the Court determines the validity of the clause. *See Radware, Inc. v. U.S. Telepacific Corp.*, No. 18-17266, 2019 WL 13202075 at *2 (D.N.J. Jun. 11, 2019). The forum-selection clause is presumed to be valid unless the resisting party demonstrates that the clause: 1) is the result of a fraud or overreaching, 2) that enforcement would violate a strong public policy of the forum, or 3) that enforcement would, in the particular circumstances of the case, result in jurisdiction so seriously inconvenient as to be unreasonable. *Id.* Second, the Court applies the §1404(a) factors, which has differing considerations depending on the validity of the forum-selection clause. Here, where the contract contains a valid forum-selection clause, the §1404(a) factors are modified pursuant to the Supreme Court's instruction that the forum-selection clause should be given "controlling weight in all but the most exceptional circumstances" because it was "bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* at *3 (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 63 (2013)). As discussed above, without the shield of caselaw such as *Kubis* that permits NJFPA cases to remain in the forum of New Jersey despite the presence of a forum-selection clause, "federal courts must honor the forum-selection clause '[i]n all but the most unusual cases[.]'" *APFA, Inc.*, 2021 WL 323474 at *4 (quoting *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 397 (3d. Cir. 2017)) (emphasis in original). Plaintiffs have not argued that their particular circumstance is so unusual that it should rebut the presumption of validity of the forum-selection clause. Nor have they argued that enforcement would, in the particular circumstances of the case, result in jurisdiction so seriously inconvenient as to be unreasonable. While Plaintiffs obliquely argue that the franchise agreement is the result of fraudulent inducement, (Amend. Compl. ¶¶1, 29-40; Pl.'s Opp. Br. at ECF No. 18 at 15), a forum selection clause is unenforceable due to fraud "only where assent to the clause itself, as opposed to the contract as a whole, is the product of fraud or coercion." *Lester v. Gene Express, Inc.*, No. 09-0403, 2009 WL 3757155 at *3 (D.N.J. Nov. 10, 2009) (citing *MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844, 847 (3d Cir. 2003)). Plaintiffs do not argue that the forum selection clause itself was the result of fraud or overreach, rather the focus of the briefing was entirely related to the alleged fraudulent inducement into the overall franchise agreement itself. Plaintiffs have not carried the burden of establishing that transfer is unwarranted and have not argued any considerations related to private or public interests and thus the matter must be transferred to the Western District of New York.

13

its correctness, and that immediate appeal may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The Third Circuit has held that a "controlling question of law" must "encompass at the very least every order which, if erroneous, would be reversible error on final appeal" and orders that are "serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at 755. It has also noted that "[i]f there are two districts, either of which would have jurisdiction, but one of which is in the opinion of the district court superior, it is extremely unlikely that a change of venue would result in a reversal after final judgment." *Id.* Given the Supreme Court's instruction that the forum-selection clause present in a valid agreement should be given "controlling weight in all but the most exceptional circumstances," and, because there are no exceptional circumstances present in this case, the Western District of New York is the appropriate venue. *Radware, Inc. v. U.S. Telepacific Corp.*, No. 18-17266, 2019 WL 13202075 at *2 (D.N.J. Jun. 11, 2019). Additionally, the Court notes that, if this issue were appealed immediately, the resolution of whether the NJFPA applies to a single count out of Plaintiffs' eight count Amended Complaint would not "materially advance the ultimate termination of the litigation." *Katz*, 496 F.2d at 754. An appeal would not eliminate the need for a trial, or a eliminate a complex issue that would complicate a trial, or involve an issue that would make discovery more costly or burdensome, rather it would delay the matter further. *Brito v. LG Elecs. USA, Inc.*, No. 22-5777, 2023 WL 5035314 at *4 (D.N.J. Aug. 8, 2023) (citing *FTC v. Wyndam Worldwide Corp.*, 10 F. Supp. 3d 602, 635 (D.N.J. 2014)).

With regard to whether there is substantial ground for difference of opinion, mere disagreement with the district court's ruling is not enough, there must be "genuine doubt as to the correct legal standard" and only where "novel legal issues are presented, on which fair-minded

14

jurists might reach contradictory conclusions" may a district court certify an issue for interlocutory appeal without first awaiting development of contradictory precedent. *Brito*, 2023 WL 503514 at *3 (D.N.J. Aug. 8, 2023). The Court does not believe that this issue is novel—*Tynan* is over thirty years old. However, the Court acknowledges that the New Jersey Supreme Court's adoption of Judge Cohen's dissent in *Tynan* is wanting of clarity, this factor alone is insufficient to satisfy the § 1292(b) factors for certification. *See Jackson Hewitt, Inc. v. DJSG Utah Tax Serv., LLC*, No. 10-5108, 2011 U.S. Dist. LEXIS 16533 at *5-6 (D.N.J. Feb. 17, 2011) ("All three conditions must be met before a court may certify an order for interlocutory appeal.").

"Section 1292(b) was not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation or to be a vehicle to provide early review of difficult rulings in hard cases. Rather certification is warranted only in 'exceptional cases,' where early appellate review might avoid protracted and expensive litigation." *Jackson Hewitt, Inc.*, 2011 U.S. Dist. LEXIS 16533 at *7-8 (D.N.J.). The Court, being mindful of its discretion in evaluating and certifying interlocutory appeals and noting that it is not mandatory to certify an interlocutory appeal even if the criteria to appeal have been met, the Court declines to certify this issue for appeal. *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976).

## V. CONCLUSION

Therefore, for the reasons set forth above, Plaintiffs' Motion for Reconsideration, or in the Alternative, Motion for Leave to File an Interlocutory Appeal (ECF No. 31), is **DENIED**. An order consistent with this Opinion will be entered.

April 30, 2024

KAREN M. WILLIAMS, U.S.D.J.