# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

WILLIAM MINNEBO; an individual; and PHILLY METAL SUPPLY LLC, a Pennsylvania limited liability company,

     Plaintiffs,

vs.

METAL SUPERMARKETS FRANCHISING AMERICA INC., et al.,

     Defendants.

**NO. 1:24-cv-00418-LJV**

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

***Document Filed Electronically***

## <u>ANSWER</u>

The defendants Metal Supermarket Franchising America, Inc. ("MSFA"), Andrew Arminen ("Arminen"), and Stephen Schober ("Schober") (collectively, the "defendants") for their Answer to the pending First Amended Complaint ("FAC") state:

1.    The defendants state that the plaintiffs' claims for relief speak for themselves, and deny the remaining allegations contained in paragraph 1 of the FAC.

2.    The defendants deny the allegations contained in paragraph 2 of the FAC.

3.    The defendants admit that William Minnebo ("Minnebo") is an individual and lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 3 of the FAC.

4.    The defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 4 of the FAC.

5.    The defendants admit that MFSA is the franchisor of the Metal Supermarkets franchise system in the United States, that Metal Supermarkets stores sell a wide variety of metals and related services to consumers, and that MFSA offers Metal Supermarkets franchises to individuals and business entities.  The defendants deny the remaining allegations contained in paragraph 5 of the FAC.

6.    The defendants admit that at all relevant times Schober has been the President and Chief Executive Officer of MSFA and is a citizen and resident of the province of Ontario, Canada.  The defendants deny any remaining allegations contained in the second numbered paragraph 3 of the FAC.

7.    The defendants admit that until October 2022, Arminen was the Vice President, Franchising of MSFA, that since October 2022 he has been Chief Operations and Development Officer, and that he is a citizen and resident of the province of Ontario, Canada.  The defendants deny any remaining allegations contained in the second numbered paragraph 4 of the FAC.

8.     The defendants lack knowledge or information sufficient to form a belief about the truth of the first two sentences contained in the second numbered paragraph 5 of the FAC.  The defendants deny the remaining allegations contained in the second numbered paragraph 5 of the FAC.

9.     The defendants admit that this Court has subject matter jurisdiction over this case, and state that the remaining allegations contained in paragraph 6 of the FAC are legal conclusions to which no response is required.

10.     The defendants state that the allegations contained in paragraph 7 of the FAC are legal conclusions to which no response is required, and further state that the allegations are moot in view of the transfer of this case to this district.

11.      The defendants state that the allegations contained in paragraph 8 of the FAC are legal conclusions to which no response is required, and further state that the allegations are moot in view of the transfer of this case to this district.

12.     The defendants deny the allegations contained in paragraph 9 of the FAC, and respectfully refers the Court to the rulings of the United States District Court for the District of New Jersey granting the defendants' motion to transfer this case to this district.

13.     The defendants deny the allegations contained in paragraph 10 of the FAC, and respectfully refers the Court to the rulings of the United States District

Court for the District of New Jersey granting the defendants' motion to transfer this case to this district.

14.    The defendants state that the allegations contained in paragraph 11 of the FAC are legal conclusions to which no response is required and further respectfully refers the Court to the rulings of the United States District Court for the District of New Jersey granting the defendants' motion to transfer this case to this district.

15.    The defendants state that the allegations contained in paragraph 12 of the FAC are legal conclusions to which no response is required and further respectfully refers the Court to the rulings of the United States District Court for the District of New Jersey granting the defendants' motion to transfer this case to this district.

16.    The defendants admit that there were over 100 Metal Supermarkets locations in 2021, state that the characterization of MSFA as "large" is subjective and ambiguous, and denies the remaining allegations contained in paragraph 13 of the FAC.

17.    The defendants state that the allegations contained in paragraph 14 of the FAC are legal conclusions to which no response is required, and denies the remaining allegations contained in paragraph 14 of the FAC.

18.     The defendants admit that Minnebo contacted MSFA about purchasing a Metal Supermarkets franchise and lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 15 of the FAC.

19.     The defendants admit that Arminen and Minnebo discussed Minnebo's purchase of a Metal Supermarkets franchise from MSFA in the spring of 2021, state that when an offer was made is a legal conclusion to which no response is required, and deny the remaining allegations contained in paragraph 16 of the FAC.

20.     The defendants admit that Philly Metal Supply LLC entered into a Metal Supermarkets Franchise Agreement on or about May 1, 2021, governing the operation of a Metal Supermarkets franchise in New Jersey, and that the agreement speaks for itself.  The defendants deny the remaining allegations contained in paragraph 17 of the FAC.

21.     The defendants stated that paragraph 18 of the FAC contains legal conclusions to which no response is required.

22.     The defendants state that the allegations contained in paragraph 19 of the FAC are legal conclusions to which no response is required.  To the extent that there are factual allegations contained paragraph 19, the defendants deny them.

23.     The defendants state that the allegations contained in paragraph 20 of the FAC are legal conclusions to which no response is required.  To the extent that there are factual allegations contained paragraph 20, the defendants deny them.

24.     The defendants state that the allegations contained in paragraph 21 of the FAC are legal conclusions to which no response is required.  To the extent that there are factual allegations contained paragraph 21, the defendants deny them.

25.     The defendants state that the allegations contained in paragraph 22 of the FAC are legal conclusions to which no response is required. To the extent that there are factual allegations contained paragraph 22, the defendants deny them.

26.     The defendants state that the allegations contained in paragraph 23 of the FAC are legal conclusions to which no response is required. To the extent that there are factual allegations contained paragraph 23, the defendants deny them.

27.     The defendants state that the allegations contained in paragraph 24 of the FAC are legal conclusions to which no response is required. To the extent that there are factual allegations contained paragraph 24, the defendants deny them.

28.     The defendants state that the allegations contained in paragraph 25 of the FAC are legal conclusions to which no response is required, and further, that the claims under the New Jersey Franchise Practices Act ("NJFPA") have been dismissed. To the extent that there are factual allegations contained paragraph 25, the defendants deny them.

29.     The defendants state that the allegations contained in paragraph 26 of the FAC are legal conclusions to which no response is required, and further, that the claims under the NJFPA have been dismissed. To the extent that there are factual allegations contained paragraph 26, the defendants deny them.

30.     The defendants state that the allegations contained in paragraph 27 of the FAC are legal conclusions to which no response is required, and further state that the claims under the NJFPA have been dismissed.  To the extent that there are factual allegations contained paragraph 27, the defendants deny them.

31.     The defendants state that the allegations contained in paragraph 28 of the FAC are legal conclusions to which no response is required, and further, that the claims under the NJFPA have been dismissed.  To the extent that there are factual allegations contained paragraph 28, the defendants deny them.

32.     The defendants state that the allegations contained in paragraph 29 of the FAC are legal conclusions to which no response is required and further the claims under the NJFPA have been dismissed.  To the extent that there are factual allegations contained in paragraph 29, the defendants deny them.

33.     The defendants state that the contents of the FDD speak for themselves, that the allegations of legal requirements require no response, and deny any remaining factual allegations contained in paragraph 30 of the FAC.

34.     The defendants deny the allegations contained in paragraph 31 of the FAC.

35.     The defendants state that the contents of the FDD speak for themselves, and deny the remaining allegations contained in paragraph 32 of the FAC.

36.     The defendants admit that Minnebo made inquiries about Norristown franchise, that the FDD did not contain the last known home telephone number of the Norristown franchisee (for, among other reasons, that it is not required to), that Arminen did not have a current phone number or email address for the Norristown franchisee, and that neither the Norristown nor the Philadelphia franchise closed because of competition from a supplier.   The defendants deny the remaining allegations contained in paragraph 33 of the FAC.

37.     The defendants admit that Arminen and Schober had 30 years' experience in the metal business on a combined basis as of 2021; lack knowledge or information sufficient to form a belief about Minnebo's prior experience and what additional inquiries Minnebo made or on what he based his decision to sign the 2021; assert that Minnebo represented to them that he had not relied on any oral representations; and deny the remaining allegations contained in paragraph 34 of the FAC.

38.     The defendants state that the contents of the FDD speak for themselves, and deny the remaining allegations contained in paragraph 35 of the FAC.

39.     In response to paragraph 36 of the FAC, including footnote1: the defendants admit that they were generally aware of the price of steel and aluminum and that they did not amend the 2021 FDD for the reason that they were not required to do so; the defendants state that the 2020 and 2021 FDD's speak for themselves; and the defendants deny the remaining allegations.

40.     The defendants deny the allegations contained in paragraph 37 of the FAC.

41.     The defendants lack knowledge or information sufficient to form a belief about what loans Minnebo made to the business or what Minnebo invested in the business.  The defendants admit that the plaintiffs requested assistance from time to time, and assert that the plaintiffs largely and consistently did not follow the defendants' advice.  The defendants deny the remaining allegations contained in paragraph 38 of the FAC.

42.     The defendants assert that the information contained in the FPR's in the FDD was accurate, and deny the remaining allegations contained in paragraph 39 of the FAC.

43.     The defendants deny the allegations contained in paragraph 40 of the FAC.

44.    The defendants admit that Minnebo closed the business on or about June 2, 2022.  The defendants deny the remaining allegations contained in paragraph 41 of the FAC.

45.    The defendants admit that they sent a letter terminating the franchise on June 4, 2022, a copy of which is Exhibit B to the FAC and which speaks for itself. The defendants deny the remaining allegations contained in paragraph 42 of the FAC.

46.    The defendants state that the allegations contained in paragraph 43 of the FAC are legal conclusions to which no response is required, and further, that the claims under the New Jersey Franchise Practices Act have been dismissed.  To the extent that there are factual allegations contained paragraph 43, the defendants deny them.

47.    The defendants admit that the quoted language is an excerpt from an article written by Schober, state that the article speaks for itself, and deny the remaining allegations contained in paragraph 44 of the FAC.

48.    The defendants state that the contents of the June 4, 2022 letter of termination and the Franchise Agreement speak for themselves, and deny any remaining allegations contained in paragraph 45 of the FAC, including footnote 2.  s

49.    The defendants deny the allegations contained in paragraph 46 of the FAC.

50.     The defendants deny the allegations contained in paragraph 47 of the FAC.

51.     In response to paragraph 48 of the FAC, the defendants incorporate their responses to the previous paragraphs.

52.     The allegations contained in paragraph 49 of the FAC are legal conclusions to which no response is required.

53.      The allegations contained in paragraph 50 of the FAC are legal conclusions to which no response is required.

54.     The defendants deny the allegations contained in paragraph 51 of the FAC.

55.     The allegations contained in paragraph 52 of the FAC are legal conclusions to which no response is required.

56.     The defendants state that the Act speaks for itself and that the allegations contained in paragraph 53 of the FAC are vague, ambiguous, incomprehensible, and argumentative.  To the extent that paragraph 53 alleges facts, the defendants deny them. .

57.     The defendants deny the allegations contained in paragraph 54 of the FAC.

58.     The defendants deny the allegations contained in paragraph 55 of the FAC.

59. The defendants deny the allegations contained in paragraph 56 of the FAC.

60. In response to paragraph 57 of the FAC, the defendants incorporate their responses to the previous paragraphs.

61. The allegations contained in paragraph 58 of the FAC are legal conclusions to which no response is required.

62. The allegations contained in paragraph 59 of the FAC are legal conclusions to which no response is required.

63. The defendants deny the allegations contained in paragraph 60 of the FAC.

64. The defendants deny the allegations contained in paragraph 61 of the FAC.

65. The defendants admit that they knew what experience they had in the small-quantity metal business, lack knowledge or information sufficient to form a belief about what Minnebo knew or would rely upon, and deny the remaining allegations contained in paragraph 62 of the FAC.

66. The defendants deny the allegations contained in paragraph 63 of the FAC.

67. The defendants deny the allegations contained in paragraph 64 of the FAC.

68.     The defendants deny the allegations contained in paragraph 65 of the FAC.

69.     The defendants deny the allegations contained in paragraph 66 of the FAC.

70.     The defendants deny that the plaintiffs are entitled to rescission or any other remedy, and all other allegations contained in paragraph 67 of the FAC.

71.     In response to paragraph 68 of the FAC, the defendants incorporate their responses to all previous allegations.

72.     The defendants admit that they were and are engaged in offering, selling and servicing Metal Supermarkets franchises, and deny the remaining allegations contained in paragraph 69 of the FAC.

73.     The defendants deny the allegations contained in paragraph 70 of the FAC.

74.     The defendants deny the allegations contained in paragraph 71 of the FAC.

75.     The defendants deny the allegations contained in paragraph 72 of the FAC.

76.     The defendants deny the allegations contained in paragraph 73 of the FAC.

77.    In response to paragraph 74 of the FAC, the defendants incorporate their responses to all previous allegations.

78.    The defendants deny the allegations contained in paragraph 75 of the FAC.

79.    The defendants deny the allegations contained in paragraph 76 of the FAC.

80.    The defendants deny the allegations contained in paragraph 77 of the FAC.

81.    The defendants deny the allegations contained in paragraph 78 of the FAC.

82-91.    No response is required to the Fifth Count, which appears at paragraphs 79-88 of the FAC, because it has been dismissed by Order of the United States District Court for the District of New Jersey.

92.    In response to paragraph 89 of the FAC, the defendants incorporate their responses to all previous allegations.

93.    The defendants deny the allegations contained in paragraph 90 of the FAC.

94.    The defendants deny the allegations contained in paragraph 91 of the FAC.

95.     The defendants deny the allegations contained in paragraph 92 of the FAC.

96.     The first sentence of paragraph 93 of the FAC states a legal conclusion to which no response is required.   Furthermore, N.J. S.A. § 2A:16:50 has no relevance to this case.  The defendants deny the allegations contained in the second sentence of paragraph 93 of the FAC.

97.     The defendants deny the allegations contained in paragraph 94 of the FAC, in part because the claim for wrongful termination under the NJFPA has already been dismissed, and state that there is no statute called the New Jersey Franchise Relations Act.

98.     The defendants deny the allegations contained in paragraph 95 of the FAC.

99.     The defendants deny the allegations contained in paragraph 96 of the FAC.

100.    The defendants admit that Plaintiffs voluntarily abandoned the franchise by closing the store in breach of the Franchise Agreement and that Plaintiffs deny that fact, and deny the remaining allegations contained in paragraph 97 of the FAC.

101.    The defendants state that the claims under the NJFPA have been dismissed and deny the remaining allegations contained in paragraph 98 of the FAC.

102.   The defendants lack knowledge or information sufficient to form a belief about what Plaintiffs contend and deny the remaining allegations contained in paragraph 99 of the FAC.

## AFFIRMATIVE DEFENSES

103.   The FAC fails to state a claim upon which relief can be granted.

104.   The plaintiffs' claims are barred by their breaches of the Franchise Agreement.

105.   The plaintiffs are estopped from asserting their claims by their written representations and agreements that they had neither received nor relied upon representations outside the forms of the agreements of the parties.

106.   The plaintiffs are barred from obtaining any relief because of their unclean hands.

107.   The plaintiffs are barred from asserting their claims by the terms of the agreements between the parties.

108.   The plaintiffs' claim under the New York franchise statute is barred by the terms of that statute.

## COUNTERCLAIMS

For its counterclaims, Metal Supermarkets Franchising America, Inc. ("MSFA") states:

## The Metal Supermarkets Franchise System

1.      MSFA is a corporation organized under the laws of Ontario, Canada with its principal place of business in Toronto, Ontario, Canada.

2.      MSFA is in the business of offering, selling, and servicing franchises operating "Metal Supermarkets" stores in the United States and Canada.

3.      Metal Supermarkets stores are metal warehouse and distribution centers that offer a wide variety of metals and related materials and provide specialized metal services including metal processing, "cut to size" metal pieces, fast delivery, computerized ordering facilities, and sourcing of non-stock and "hard to find" items, with no required minimum limit on order size. Stores sell various grades, sizes and shapes of metals such as aluminum, steel, stainless steel, brass and copper to customers who are typically the maintenance and/or engineering departments of businesses such as manufacturing facilities as well as maintenance providers, food processors, machine shops, tool and die shops, contractors, welders, fabricators, schools and universities, hospitals, hotels other institutions and service companies. Stores are authorized to offer metal processing services which include, among other

things, fabricating, painting, welding, polishing, notching, galvanizing, bending, drilling, punching or cutting of metal.

4.     Metal Supermarkets franchisees must sign a standard form of franchise agreement. The standard form franchise agreement grants franchises the right to operate a store using trademarks and service marks, including the mark "Metal Supermarkets" and other service marks and trademarks that MSFA may designate (the "Marks"), market analyses, supplier relationships, sales and marketing methods, training, record keeping, custom-designed computer software and business management.

### The Metal Supermarkets Franchise Agreement Between MSFA and The Counterclaim Defendants

5.     The plaintiff/counterclaim defendant Philly Metal Supply, Inc. ("PMSI") executed a Metal Supermarkets Franchise Agreement effective as of April 15, 2021 (the "Franchise Agreement").  A copy of the Franchise Agreement is Exhibit A to the First Amended Complaint ("FAC") in this action.

6.     On information and belief, PMSI is a Pennsylvania limited liability company with its principal place of business in Garnet Valley, PA.

7.     On information and belief, the sole member of PMSI is the plaintiff/counterclaim defendant William Minnebo ("Minnebo").

8.     On information and belief, Minnebo is a citizen and resident of Pennsylvania.

9.     Minnebo executed a personal guarantee of PMSI's obligations under the Franchise Agreement.  The guarantee executed by Minnebo specifically requires Minnebo to "make each payment required of Franchisee" under the Franchise Agreement.  A copy of the guarantee is Schedule D to the Franchise Agreement, which is Exhibit A to the FAC.

10.     In Section 2.1 of the Franchise Agreement. MSFA granted to PMSI the right, and PMSI assumed the obligation, to operate a Metal Supermarkets store at the franchised premises for a period of ten years, commencing on the date of the Franchise Agreement.

11.     The franchised location was stated as "to be determined" in the Franchise Agreement, but by agreement dated May 6, 2021, was determined to be 1030 Delsea Drive, Unit 9s Deptford, New Jersey 08093.

12.     Section 3.2 of the Franchise Agreement required PMSI to pay a monthly royalty fee to MSFA.  Pursuant to section 3.2 (b), the royalty fee was calculated as a percentage of Gross Sales, on a sliding scale set forth in that section. Pursuant to section 3.2 (a) the royalty fee calculated in section 3.2 (b) was reduced to 60% of the amount calculated for the first 12 months of operation.

13.     Section 3.2(c) required PMSI to pay a minimum monthly royalty, notwithstanding the amounts calculated in accordance with section 3.2 (b), beginning in the second year of operation of operation.  The minimum royalty fee is calculated as the greater of a monthly minimum royalty as set forth below (subject to an annual CPI adjustment effective as of MSFA's fiscal year end and the base year being MSFA's fiscal year ended September 30, 2020) or the royalty calculated in section 3.2(b):

> Year 2: $1,618
> Year 3: $2,203
> Year 4: $2,310
> Year 5: $2,447
> Year 6: $2,655
> Year 7: $2,861
> Year 8: $3,104
> Year 9 and after: $3,379

14.     Section 3.3 of the Franchise Agreement required PMSI to pay interest on any past due amounts at the rate of 16% per annum, plus a late fee of $100 for any payment that is not received by the due date.

15.     Section 7.4 of the Franchise Agreement required PMSI to comply with the Metal Supermarkets Operations Manual and related communications with respect to a variety of standards including, without limitation, days and hours of operation.  The Operations Manual has at all relevant times required Metal Supermarkets stores to be open to the public during regular business hours Monday through Friday.

**PMSI's Closure of Its Metal Supermarkets Franchise After
Less Than A Year of Operation**

16.    PMSI's Metal Supermarket store opened on July 6, 2021.

17.    Less than a year later, on or about June 2, 2022, PMSI closed its Metal Supermarkets store in Deptford, NJ.  PMSI, through both its counsel, and Minnebo announced that PMSI had ceased operations and did not intend to reopen its franchised Metal Supermarkets store.

18.    Section 12.2 of the Franchise Agreement provides, in part:

**12.2   Termination Upon Notice**

In addition to our right to terminate pursuant to other provisions of this Agreement and under applicable law, you will be in breach of this Agreement and we will have the right to terminate this Agreement, effective upon delivery of notice of termination to you, if you or any of your Owners, Operating Principal or Affiliates:

•        *          *          *          *

(h)    after opening your Store, you fail for any reason to have it open for business for any four (4) consecutive days or clearly demonstrate or announce that you have ceased operations;

19.    By letter dated June 4, 2022, MSFA exercised its right under section 12.2 of the Franchise Agreement to terminate the Franchise Agreement for PMSI's failure to open for business and announcement that it had ceased operations during the term of the Franchise Agreement.

## The Prior Proceedings In This Case

20.     PMSI and Minnebo commenced this action against MSFA, Stephen Schober, and Andrew Arminen in the Superior Court of New Jersey, Gloucester County, on August 5, 2022.

21.     Section 16.2 of the Franchise Agreement provides that "any action that you bring against us, in any court, whether federal or state, must be brought only within the federal or state courts having jurisdiction over Erie County, New York."

22.     The defendants removed this case to the United States District Court for the District of New Jersey on October 11, 2022.

23.     On November 1, 2022, the defendants filed a motion to transfer this case to this Court in accordance with the agreement of the parties in section 16.2 of the Franchise Agreement, and to dismiss Count 5, alleging violation of the New Jersey Franchise Practices Act.

24.     The court granted the defendants' motion to transfer by Order dated September 7, 2023, and also granted the motion to dismiss Count 5.

25.     On September 22, 2023, PMSI and Minnebo filed a motion for reconsideration.  The court denied that motion by Order dated April 30, 2024.

## COUNT ONE
### (Breach of Contract – Failure to Operate Franchise)

26.     MSFA realleges every other paragraph of this counterclaim.

27.     PMSI breached the Franchise Agreement by failing to perform its obligation under the Franchise Agreement to operate a Metal Supermarkets franchise for the full term of the Franchise Agreement.

28.     MSFA substantially performed its obligations under the Franchise Agreement.

29.     MSFA has been damaged by PMSI's breach.  Among other things, MSFA has been deprived of its contractual right to collect royalty fees, the contracted-for minimum royalty, for the full term of the Franchise Agreement.

30.     MSFA has sustained actual damages in an amount to be proven at trial, but believed to be not less than $ 230,000, exclusive of interest.

## <u>COUNT TWO</u>
### (Breach of Contract – Failure to Comply with Forum Selection Clause)

31.     MSFA realleges every other paragraph of this Counterclaim.

32.     PMSI and Minnebo's filing of this action in New Jersey breached section 16.2 of the Franchise Agreement, which required them to file "any action" against and including MSFA in a court having jurisdiction over Erie County, New York.

33.     PMSI and Minnebo's breach of section 16.2 of the Franchise Agreement has caused damage to MSFA.

34.     MSFA has sustained damages as a result of PMSI and Minnebo's breach in an amount to be proven at trial, but believed to be not less than $40,000, exclusive of interest.

## COUNT THREE
**(Breach of Contract – Failure to Pay Interest and Late Fees)**

35.     MSFA realleges every other paragraph of this Counterclaim.

36.     PMSI has breached its obligation under the Franchise Agreement to pay interest and late fees on past due amounts.

37.     MSFA has been damaged by PMSI's breach of its obligation to pay interest and late fees.

38.     MSFA has been damaged by PMSI's failure to pay interest and late fees in an amount to be proven at trial.

## COUNT FOUR
**(Breach of Contract – Obligation to Pay Attorneys' Fees)**

39.     MSFA realleges every other paragraph of this Counterclaim.

40.     PMSI is obligated under the Franchise Agreement to pay MSFA's costs associated with this section, including MSFA's attorneys' fees.

41.     Section 15.3(a) of the Franchise Agreement provides that PMSI agrees to indemnify MSFA "against any and all Damages that arise directly or indirectly . . . from your breach of this [Franchise] Agreement." Section 15.3(b) of the Franchise Agreement defines "Damages" to include, without limitation, "all expenses, costs

and lawyers' fees incurred for any indemnified party's primary defense of for enforcement of its indemnification rights."

42.    Section 16.5 of the Franchise Agreement provides:

**16.5 Costs and Attorneys' Fees**

You agree to pay us all damages, costs and expenses (including without limitation reasonable attorneys' fees, court costs, discovery costs, and all other related expenses) that we incur at any time in: (a) obtaining injunctive or other relief including the successful initiation and proof of claim for the enforcement of any provisions of this Agreement (including without limitation Sections 9 and 12 above); or (b) successfully defending a claim from you that we misrepresented the terms of this Agreement, fraudulently induced you to sign this Agreement, that the provisions of this Agreement are not fair, were not properly entered into, and/or that the terms of this Agreement(as it may be amended by its terms) do not exclusively govern the parties' relationship.

43.    PMSI is obligated to pay MSFA's attorneys' fees and other costs in connection with this case.

44.    MSFA is being damaged on an ongoing basis by PMSI's failure to pay its attorneys' fees and other costs in an amount that cannot be determined until the conclusion of this case.

**COUNT FIVE**
**(Breach of Personal Guarantee)**

45.    MSFA realleges every other paragraph of this Counterclaim.

46.    Pursuant to the personal guarantee executed by Minnebo in connection with the Franchise Agreement, Minnebo is jointly and severally liable with PMSI all of PMSI's obligations under the Franchise Agreement.

47.    MSFA has been and is continuing to be damaged by Minnebo's failure to comply with the obligations under his personal guarantee in an amount to be proven at trial.

WHEREFORE, the defendants and counterclaim plaintiff demand judgment:

1.    Dismissing the claims asserted in the First Amended Complaint with prejudice.

2.    Awarding MSFA damages on its counterclaims against PMSI and Minnebo jointly and severally.

3.    Awarding MSFA its costs of this action, including without limitation its reasonable attorneys' fees.

4.    Such other and further relief as the Court considers proper.

Respectfully submitted,

/s/ James C. Rubinger
James C. Rubinger
PLAVE KOCH PLC
3120 Fairview Park Drive
Suite 420
Falls Church, VA   22042
Phone:  703.774.1208
Fax:  703.774.1201
Email:  jrubinger@plavekoch.com

May 29, 2024                              *Attorneys for Defendants/Counterclaim*
                                         *Plaintiff*

## CERTIFICATE OF SERVICE

The foregoing document was served on all counsel of record via the Court's

ECF system on May 29, 2024.

/s/ James C. Rubinger
James C. Rubinger
PLAVE KOCH PLC
3120 Fairview Park Drive
Suite 420
Falls Church, VA   22042
Phone:  703.774.1208
Fax:  703.774.1201
Email:  jrubinger@plavekoch.com